Filed 5/4/15  In re Nancy P. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re NANCY P., a Person Coming Under the Juvenile Court Law. | B259126 |
| | (Los Angeles County Super. Ct. No. CK75178) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent. | |
| v. | |
| MIRANDA E., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Robert S. Draper, Judge.  Affirmed.

Lori Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Navid Nakhjavani, Deputy County Counsel for Plaintiff and Respondent.

Appellant Miranda E. (mother) appeals from the juvenile court's findings and orders establishing dependency jurisdiction over her daughter Nancy P. (born Sept. 1998), and requiring mother to participate in random drug and alcohol testing and in counseling to address sex abuse issues. Mother contends there was insufficient evidence to support the juvenile court's jurisdictional findings under Welfare and Institutions Code section 300, subdivisions (b) and (d)[1] that mother failed to protect Nancy from sexual abuse by mother's male companion, and that mother abused alcohol, placing Nancy at risk of harm. We affirm the juvenile court's jurisdictional and dispositional orders.

## BACKGROUND

### Section 300 petition and prior child welfare history

On June 9, 2014, the Los Angeles County Department of Children and Family Services (the Department) received a referral alleging that mother's boyfriend Jose L., had sexually abused Nancy. On June 6, 2014, Jose approached Nancy and began touching her chest. Nancy asked him to stop, but Jose persisted. When Nancy moved away from him, Jose attempted to touch her leg. Later that evening, Nancy told mother what had happened, and mother evicted Jose from the family home.

The family had a history with the Department that included a sustained petition under section 300, subdivision (b) that Nancy's presumed father, Francisco P. (father), sexually abused Nancy and that mother failed to protect Nancy when she knew of the sexual abuse. Father was arrested and incarcerated, and mother received family preservation services. In February 2014, Nancy was hospitalized for self-cutting and expressing suicidal ideations. She told mother that mother's boyfriend Jose, who resided in the family home, was a "bad person" and had touched her inappropriately and without her permission. The Department's investigation of the February 2014 referral was pending at the time it received the June 2014 sexual abuse referral.

Nancy told the social worker who responded to the June 2014 referral that Jose no longer lived with the family because he "tried to touch me again." Nancy said that she

---

**1**    All further statutory references are to the Welfare and Institutions Code.

2

had always felt uncomfortable around Jose because he would look at her "weird," especially when she was wearing shorts or loose fitting pants. She said that on June 6, 2014, Jose had touched her collarbone and her chest. Nancy reported the incident to mother, who confronted Jose and told him, "I told you to stay away from my daughter and not to touch her." Jose then left the family home.

Nancy disclosed to the social worker other incidents involving Jose. She said that approximately two years ago, Jose started massaging her back. Nancy asked him to stop but he did not. On other occasions, Jose had touched her bottom. Nancy said she told mother in February 2014 about the massages but she had not disclosed the other incidents involving Jose because she did not think mother would believe her.

The social worker also spoke with Nancy's older sibling Elizabeth, who lived in the family home. Elizabeth reported that mother consumed alcohol on the weekends to the point of becoming "really intoxicated." She stated that on June 8, 2014, she arrived home at 10:30 p.m. and found mother drinking and playing music very loudly. When Elizabeth asked mother to turn the music down, mother started screaming at Elizabeth and her siblings. Elizabeth said that Nancy looked distressed during the incident and that mother said to Nancy at one point, "Your final victim left, what are you going to do now?"

Mother told the social worker she had never observed Jose give Nancy "as much as even a suspicious look." She recalled seeing Jose massaging Nancy's back on a few occasions but insisted that she never noticed anything suspicious. Mother stated that when Nancy was hospitalized in February 2014, she told mother that Jose had massaged her without her consent, but mother did not given much weight to the disclosure because she believed Nancy was simply upset about being hospitalized. Mother nevertheless spoke with Jose and told him to "respect" her child. Mother admitted drinking alcohol on the weekends and acknowledged that she drank more than usual on June 8, 2014. She told the social worker that on that day, she said things she would not have said had she been sober.

3

On June 10, 2014, the social worker spoke with Nancy's therapist, who expressed concerns that mother minimized Nancy's past sexual abuse. Mother had described the prior abuse by father as "an accident." The therapist was also concerned that Nancy had previously disclosed feeling uncomfortable around Jose and that mother's only response was to say that she would speak with Jose.

A forensic medical report was prepared following an examination of Nancy on June 13, 2014. During the examination, Nancy stated that Jose had approached her while she was on her bed and started rubbing her legs and her shoulders near her breast. She felt uncomfortable and kicked his hands away. She said that Jose had been doing this for approximately a year. Nancy told mother about Jose's behavior and mother told Jose to stop talking to Nancy. She said that mother blamed her because Jose was no longer living with the family. Nancy reported that mother was now drinking a lot and that when she was drunk, she said things to Nancy. Nancy stated that she was not afraid of mother and that she felt safe now that Jose was gone.

On June 23, 2014, the Department filed a section 300 petition on behalf of Nancy alleging sexual abuse by Jose and substance abuse and failure to protect by mother. At the detention hearing, the juvenile court found a prima facie case that Nancy was a minor described by section 300, subdivisions (b) and (d). The court ordered Nancy released to mother's custody on the condition that Jose not reside in the home and not have any contact with Nancy.

In a July 2014 interview with the dependency investigator, Nancy said the allegations in the petition were all true. Nancy said that Jose had lived in the family home for approximately three years. She recalled that on one occasion, Jose had complained of back pain and mother had encouraged Nancy to massage Jose's back. Although she did not want to massage Jose, Nancy did so because mother had asked her. After that incident, Nancy said that Jose gave her massages on her shoulder, arms, breast, thighs, and legs on a regular basis without her consent. When Nancy was hospitalized in February 2014, she told mother about Jose's behavior, and mother had a talk with Jose. Jose stopped touching Nancy for a few months thereafter, but then resumed doing so.

4

Nancy also discussed mother's drinking with the dependency investigator. She stated that mother drank a combination of beer and tomato juice while working and approximately four beers when she was not working.

Mother told the dependency investigator that when Nancy was hospitalized she told mother that Jose was a bad person and that she did not want him in the home. Although Nancy had not offered any further explanation for her feelings about Jose, mother spoke with Jose and told him to leave Nancy alone. Mother told the investigator that Nancy had experienced a "similar situation" with father and that mother initially had doubts about whether Jose had actually touched Nancy. After Nancy disclosed the details of the June 2014 incident with Jose, mother became convinced that Jose had sexually abused Nancy, and mother went to the police to file a report. With regard to allegations about her alcohol use, mother admitted consuming alcohol on the weekends. She said she used to drink on a nightly basis but had stopped doing so after she began attending AA meetings.

**Jurisdiction/disposition**

At a hearing held on July 21, 2014, the juvenile court continued the matter to allow the Department to determine whether informal supervision of the case pursuant to section 301 would be appropriate. In a last minute information for the court filed on August 13, 2014, the Department reported that mother preferred juvenile court jurisdiction over a voluntary case because she felt she needed to comply with court orders.

At the September 19, 2014 jurisdictional hearing, the juvenile court received the Department's reports into evidence and took judicial notice of the contents of the file. No additional testimony or evidence was presented.

After hearing argument from counsel for the parties, the juvenile court found the allegations of the petition to be true and sustained the petition, finding Nancy was a minor described by section 300, subdivisions (b) and (d). The court declared Nancy a dependent of the juvenile court and ordered her released to mother's custody. Mother was ordered to participate in counseling to address sex abuse issues and to submit to 10

5

random drug and alcohol tests. The court ordered the Department to file a section 388 petition if any of mother's random drug and alcohol tests were positive and to provide mother with family maintenance services.

This appeal followed.

## DISCUSSION

### I. Standard of review

We review the juvenile's court's jurisdictional findings under the substantial evidence standard. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) Under this standard, we review the record to determine whether there is any reasonable, credible, and solid evidence to support the juvenile court's conclusions, and we resolve all conflicts in the evidence and make all reasonable inferences from the evidence in support of the court's orders. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393.) We review the juvenile court's selection of a dispositional order for a minor for abuse of discretion. (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.)

### II. Jurisdiction

#### A. Section 300, subdivisions (b) and (d)

Section 300, subdivision (b) accords the juvenile court jurisdiction over a child if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child."

Section 300, subdivision (d) accords the juvenile court jurisdiction over a child when "[t]he child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse."

#### B. Substantial evidence supports the jurisdictional findings

Mother contends there was insufficient evidence to support the jurisdictional findings that she knew Nancy was being sexually abused by Jose prior to Nancy's June 6,

6

2014 disclosure and that she failed to protect Nancy from sexual abuse. Mother further contends that her alcohol use did not place Nancy at risk of harm. As we discuss, substantial evidence supports the juvenile court's findings.

### 1. Failure to protect

Nancy disclosed to mother in February 2014 that Jose was touching her without her permission, massaging her shoulders, arms, thighs, and legs. Mother admitted that Nancy had spoken with her about Jose in February 2014, stating that Jose was a "bad person" and that she did not want him in the home. She also admitted seeing Jose massage Nancy's back on past occasions. Although Nancy had been a victim of prior sexual abuse by father, mother doubted Nancy's initial disclosure about Jose's abuse and did nothing except to tell Jose to "respect" her child. Jose continued to abuse Nancy thereafter until Nancy's June 2014 disclosure. Substantial evidence supports the juvenile court's findings that mother knew of Jose's sexual abuse and that she failed to protect Nancy from such abuse.

### 2. Alcohol abuse

Because the juvenile court's assumption of jurisdiction over Nancy was proper based on mother's failure to protect the child from Jose's sexual abuse, we need not address mother's challenge to the sufficiency of the evidence regarding the allegations concerning her alcohol abuse. "'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

## III. Dispositional orders

Mother's challenge to the juvenile court's dispositional orders requiring her to participate in family maintenance services is based solely on the ground that the court's

assumption of jurisdiction was improper.  Because substantial evidence supports the jurisdictional findings, the dispositional orders will not be disturbed on appeal.

## DISPOSITION

The juvenile court's jurisdictional and dispositional findings and orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ


We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
HOFFSTADT


8